## First National Bank of York, Appellant, *v.* Diehl.

*Promissory notes—Indorsers—Extension of time—Contract.*

Where the payee of a promissory note made by a corporation enters into an agreement with one of the several indorsers on the note, that if such indorser will pay the note as soon as possible, or at the most within sixty days, other notes of such indorser will be extended, such agreement does not release the other indorsers from liability, if the note has been duly protested, and notice of protest has been given to them. In such a case the mere fact, without more, that the indorser with whom the agreement was made, was the president of the corporation which made the note, is immaterial as affecting the liability of the other indorsers.

Argued May 22, 1907.    Appeal, No. 180, Jan. T., 1907, by

plaintiff, from judgment of C. P. York Co., April T., 1906, No. 135, on verdict for defendants in case of First National Bank of York v. S. K. Diehl et al. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Assumpsit on a promissory note. Before BITTENGER, P. J.

The court charged as follows :

We have tried an important case in a very short time by means of an agreement between counsel by which they have admitted all the facts in the case. A promissory note was signed by the carriage company, and the note indorsed for $5,000 and discounted in the First National Bank of York. It was indorsed by a number of indorsers, among whom were the four parties defendant in this case, namely, W. J. Reider, N. S. Brillhart, S. K. Diehl and J. Fletcher Lutz. The parties have agreed upon the facts contained in the paper which has been offered by the plaintiffs in evidence, from which it appears that the bank granted time to W. C. Koller, who was president of the carriage works and also an indorser on the note, amounting in all to nearly a year ; and that he was the president of the company to which they gave this extension of time. [A matter of law is raised in those admissions as to the effect of giving time upon this note, and the court has been asked to instruct the jury that by giving that time the bank prevented itself from suing the company and Mr. Koller during the time of extension given, and by that act the law discharged the sureties on this note, four of whom are in this case as defendants, whose names I have stated. We are of the opinion strongly that the action of the bank in this case was such as to prevent their recovering in this action against these indorsers who were sureties on this note. They were indorsers only for accommodation, and not for value. The Supreme Court has decided that in such cases the extension of time is a discharge of the surety, and we are compelled to hold that opinion in this case. We think that the law applies in this case, and we therefore instruct the jury that their verdict should be for the defendants. While they have produced a note in evidence upon which they have shown a prima facie case on which they could recover a verdict, the defendants

have produced evidence which is a perfect defense, and to that there has been no answer; therefore it will be for the jury to find a verdict in favor of the defendant.] [2] [The amount claimed was $4,037.95 with interest from May 11, 1905, with costs of suit. The plaintiff has not sustained his action showing that plaintiff is entitled to recover any amount of this money and, therefore, you will render a verdict in favor of the defendants.] [3]

.Verdict and judgment for defendants.    Plaintiff appealed.

*Errors assigned* were (2, 3) above instructions, quoting them ; (7) in refusing plaintiff motion for judgment non obstante veredicto.

*Henry C. Niles*, with him *E. W. Spangler* and *George E. Neff*, for appellant.—If a creditor by any contract which can be enforced gives time to his principal debtor, he discharges the surety : Clippinger v. Creps, 2 Watts, 45 ; Henderson v. Ardery, 36 Pa. 449.

The kind of contract having this effect is only one which precludes the creditor from proceeding immediately against the principal himself, or from accepting payment from a surety and turning over the obligation for him to sue upon at once or take any steps he desires against the principal for his protection.

Nothing short of an agreement having this effect will discharge the surety, because his rights are not impaired and he is not injured : Farmers' Nat. Bank v. Marshall, 9 Pa. Superior Ct. 621 ; Brubaker v. Okeson, 36 Pa. 519 ; Peoples' Bank v. Legrand, 103 Pa. 309 ; Weakly v. Bell, 9 Watts, 273 ; Schock v. Miller, 10 Pa. 401 ; Klingensmith v. Klingensmith, 31 Pa. 460; Wharton v. Duncan, 83 Pa. 40.

The bank was entitled to take payment at any time from Koller; and, as an inducement to him to pay, it had a right to promise to give him time upon the other obligations held against him : Zane v. Kennedy, 73 Pa. 182; Shaffstall v. McDaniel, 152 Pa. 598.

*Charles A. Hawkins*, with him *Charles Reider* and *J. S. Black*, for appellees.

OPINION BY MR. JUSTICE ELKIN, June 4, 1907:

There are eight joint indorsers on the note on which this suit is brought. They were all notified of nonpayment at maturity, and therefore, on their promise to pay on the single condition that the maker do not, became liable for the whole amount due and unpaid. The appellant made out a prima facie case by proving the execution of the note, together with the indorsements, and by showing that notice of nonpayment at maturity had been given. The defendants in the court below successfully contended that they were discharged because of an agreement entered into between the bank and one of the joint indorsers, which was construed to be equivalent in legal effect to the giving of time to the maker. It is true that in the application of settled rules of law in the administration of the law merchant, the relation of principal and surety is so far recognized that an indorser may be discharged by the holder of a negotiable instrument giving time for payment to the maker. This rule is founded in reason and equity. One who becomes an accommodation indorser for another, does so without any benefit accruing to himself, and has a right to insist that the fixing of his liability shall be limited to the time named in the paper indorsed by him. His promise is to pay, if the maker do not, when the note matures. He voluntarily takes upon himself the burden of answering for another's debt, and hence the law says if the holder enters into an agreement with the maker whereby the time of payment is extended, or new conditions introduced, without the consent of the indorser, he is discharged from liability because the holder, having taken a new and inconsistent security, or having made a new agreement with the maker as to the time of payment, is held to have abandoned the old one. In the present case the holder of the note did not enter into an agreement with the maker to extend the time of payment, nor did it demand or accept a renewal of the protested note. The original note remained in the possession of the bank since maturity. Several partial payments were made and credited on it. This action is to recover the balance due. The agreement on which appellees rely to defeat a recovery is between the bank and Koller, one of the joint indorsers, and was entered into under the following circumstances. The bank held certain paper in

which Koller, either as maker, indorser, or as furnishing collateral, or as president of the carriage company, was interested. It is quite evident that the bank, for its own protection, wanted Koller to personally assume the entire indebtedness, and in consideration of this assumption he was to have an extension of time on the notes not included in this suit. As to the note in suit it was provided that "if the said Koller shall pay as soon as possible within sixty (60) days the said five thousand ($5,000) dollar note, described as No. 3," then and in that event the bank would do the things agreed upon with respect to the other notes. The learned court below held that in legal effect this amounted to an extension of time to the maker for the payment of the note in controversy, and that the other indorsers were discharged from liability on this account. We cannot accept this conclusion as a correct view of the law and the facts in this case.

The protesting of the note fixed the status of the parties and the liability of the indorsers. The bank could then proceed against the maker, or against the indorsers jointly. It was the right of each indorser to voluntarily pay the note after maturity and protest and then proceed against the maker for the amount due thereon, together with interest and proper costs, or against the other indorsers jointly liable with him for contribution. This was the legal situation after maturity of the note and notice of nonpayment. The holder could not, without the consent of the indorsers, enter into any agreement with the maker whereby the time of payment was extended, or any other thing permitted to be done, the effect of which would be to deprive them of any right which they had when their liability as indorsers attached by notice of nonpayment. The arrangement with Koller was that he pay as soon as possible and at most within sixty days. There is no reason why the bank should not say to him or to the other indorsers, your liability being now fixed, you must pay as soon as possible, and if you fail to pay within sixty days we will not refrain any longer from proceeding to collect. This, in legal effect, is what the bank agreed to do, and this agreement was with an indorser not the maker. It did not deprive the other indorsers of any of their legal rights, nor did it deny to them the privilege of paying at any time and then

proceeding against the maker or the other indorsers. Therefore it did them no harm.

The maker of the note was the Cosmos Carriage Company, and no agreement was made with this company for an extension of time. It is argued that because Koller was the president of the carriage company, his act as an individual in securing what is alleged to be an extension of time inured to the benefit of his principal, the carriage company. This position cannot be sustained. The facts agreed upon and in evidence do not warrant any such conclusion. We do not see that the carriage company had anything to do with the agreement between the bank and Koller, nor was its liability affected thereby. As a legal entity the carriage company acted in its corporate capacity entirely independent of the personal obligations of its stockholders or of the individual acts of its officers and directors. There is nothing in the evidence to show that there was any fraud, collusion or misrepresentation between the parties to this transaction, nor do we understand that bad faith or abuse of fiduciary relations is charged. We are simply asked to hold, as a matter of law, that because Koller as an individual had indorsed the note while he was president of the carriage company, any agreement made by him as an individual relating to the note will be presumed to be the act of the corporation and intended for its benefit. We are not familiar with any law to support this position. Koller as an individual had a right to enter into any kind of an agreement he chose to make with the bank, and the corporation of which he was president was in no way affected thereby. It is perfectly clear, therefore, that the agreement in question did not extend time for payment to the carriage company, the maker of the note. We quite agree with the learned counsel for appellant that the agreement did not contain any provision whereby the bank precluded itself from proceeding at any time to collect from the maker, the Cosmos Carriage Company, or from accepting payment from any of the indorsers, and immediately thereupon delivering the note for suit or any other process desired. Mere delay in enforcing the collection of the note after maturity when the liability of the indorsers had become fixed by law under the circumstances of this case will not discharge the sureties from their obliga-

tion to pay. This case comes reasonably within the rule of Zane v. Kennedy, 73 Pa. 182, and Schaffstall v. McDaniel, 152 Pa. 598.

Judgment reversed and record remitted to the court below with instructions to enter judgment for the plaintiff non obstante veredicto.